IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:10-cr-00138 |
| v. | ) | |
| | ) | Judge Nixon |
| DARIN LEE MCALLISTER | ) | |
| | ) | |

ORDER

Pending before the Court is an order of remand entered by the United States Court of Appeals for the Sixth Circuit (Doc. Nos. 129, 133), following an appeal by Defendant Darin Lee McAllister. On appeal, Defendant challenged the Government's use of peremptory strikes against African-American jurors at Defendant's trial under *Batson v. Kentucky*, 476 U.S. 79 (1986). *United States v. McAllister*, 693 F.3d 572 (6th Cir. 2012). In its opinion, the Court of Appeals directed this Court "to make explicit on-the-record findings as to whether McAllister established the existence of purposeful race discrimination in the selection of his jury, and whether his *Batson* challenge requires that his conviction be reversed." *Id.* at 582.

Accordingly, the Court states its findings of fact to support its original denial of the *Batson* challenge and, as a result, finds that Defendant's conviction should not be reversed.

I.  **BACKGROUND**

On May 19, 2010, Defendant — a former agent with the Federal Bureau of Investigation — was charged on with fifteen counts of wire fraud, in violation of 18 U.S.C. § 1343; one count of bank fraud, in violation of 18 U.S.C. § 1344; and three counts of bankruptcy fraud, in violation of 18 U.S.C. § 152(3). (Doc. No. 1); *see McAllister*, 693 F.3d at 576–77 (providing the full details of the underlying offenses).

1

During *voir dire*, the Government used peremptory strikes against the only two African-Americans in the jury pool: Willie Ewing and Jaminthia Pillow. It struck Ewing first, after the Court had established that Ewing was unemployed, and after the Government learned through questioning that Ewing had previously worked at a bank, had served for four years as a military police officer, and had worked for various security companies. Later during *voir dire*, the Government questioned Pillow and discovered she previously been convicted for giving false information to law enforcement during an investigation. This fact was not disclosed in her juror questionnaire. The Government then used a strike against Pillow, and Defendant immediately raised the *Batson* challenge, which was addressed after the jury was impaneled.

During a short hearing on the *Batson* challenge, the Court stated that the Government did not need to explain striking Pillow, whom it recognized "stated that she had been convicted of a felony involving deception." When the Court asked the Government to explain its peremptory strike against Ewing, the Government explained that the "main reason" for striking Ewing was "that he was unemployed." The Government stated that, in addition, "there was a concern [Ewing] would identify with the defendant" because he had served in the Military Police from 1968 to 1972. The Court acknowledged this explanation by stating, "All right." The Government then stated for the record that, at the time Ewing was struck, one African-American remained in the petit jury pool. The Court acknowledged this by again stating, "All right." This concluded discussion on the *Batson* challenge.

At trial, Defendant was convicted by a jury of wire and bankruptcy fraud and sentenced to forty-eight months imprisonment with more than $750,000 to pay in restitution. Defendant appealed his conviction on several grounds: (1) the Court erred in denying his *Batson* challenge; (2) judicial misconduct; (3) prosecutorial misconduct; and (4) ineffective assistance of counsel at

trial. *McAllister*, 693 F.3d at 572. While the Court of Appeals rejected Defendant's claims of misconduct and ineffective assistance of counsel, it remanded for further findings of fact in the *Batson* challenge. *Id.*

The Court of Appeals concluded that this Court had not properly completed the third of three required steps in a *Batson* challenge (as discussed below) and, thus, the *Batson* analysis at trial was constitutionally insufficient. The Court of Appeals remanded for this Court "to make explicit on-the-record findings as to whether McAllister established the existence of purposeful race discrimination in the selection of his jury, and whether his *Batson* challenge requires that his conviction be reversed." *Id.* at 582. "In making those findings," the Court of Appeals held, this Court "must consider all evidence, including juror questionnaires, that bear on the issue of racial animosity." *Id.* at 582–83.

The Court of Appeals then combed the juror questionnaires and court transcripts for its own statements of fact regarding evidence of discrimination, and concluded that the "errors" it believed it had discovered "were not necessarily inconsequential." *Id.* It noted that "there were impaneled non-African-American jurors who expressed similar, albeit not exact, employment status as Juror Ewing" and who also had a law enforcement background, but whom were not the targets of Government peremptory strikes. *Id.* at 581. Specifically, it highlighted the following facts:

- Juror Carolyn Goldtrap[1] stated she was an interim teacher searching for full-time work;
- Juror Betty Goodowens indicated only that she "worked at home"; and
- Alternate juror Heidi Wallace-Langston was a retired Missouri parole and probation

---

[1] Though initially referred to as Carolyn Goldtrap in the proceedings, this juror clarified that her last name was Dawson, as she had recently married. (Doc. No. 89 at 10.)

officer.

*Id.* The Court of Appeals made clear "that these facts . . . are not necessarily indicia of purposeful racial discrimination," but opined that it appeared the Government had applied different standards to Ewing and Wallace-Langston based perhaps on a fear Ewing would relate to the Defendant based on race. *Id.* at 582. Nonetheless, it emphasized that this Court was in the "best position" to resolve the issue by engaging in a constitutionally sufficient analysis. *Id.* at 582.

Following the remand, this Court ordered both parties to brief the issue of the scope of the remand and to address proposed findings of fact. (Doc. Nos. 136–38.) The Court then held a hearing on November 6, 2012, with both parties to address the remand. (Doc. No. 139.)

## II. LEGAL STANDARD

It is well-established that discriminatory use of peremptory strikes during jury selection may violate the Equal Protection Clause, such that justice requires reversal of a defendant's conviction. *Batson*, 476 U.S. 79. In *Batson*, the Supreme Court outlined a three-step process to challenge the use of racially discriminatory peremptory strikes: "(1) the opponent of the peremptory strike must make a prima facie case that the challenged strike was based on race; (2) the burden then shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike; and (3) the trial court must determine whether the opponent of the peremptory strike has proven purposeful discrimination." *McAllister*, 693 F.3d at 578 (citing *United States v. Cecil*, 615 F.3d 678, 686 (6th Cir. 2010)).

To establish a prima facie case, "the party challenging the peremptory strike must demonstrate that: (1) he is a member of a cognizable racial group; (2) a peremptory challenge was employed to remove a juror of the defendant's race; and (3) these facts, along with other

4

relevant circumstances, raise an inference that the proponent of the peremptory challenge used the challenge to exclude a prospective juror because of his or her race." *Id.* at 578–79 (citing *United States v. Odeneal*, 517 F.3d 406, 418–19 (6th Cir. 2008); *United States v. Ferguson*, 23 F.3d 135 (6th Cir. 1994)).

In the second step, once the challenger has made a prima facie showing, the burden shifts to the other party to come forward with a race-neutral explanation for its peremptory challenge. *Batson*, 476 U.S. at 97–98. "At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). In other words, a reason need not be "particularly persuasive or plausible." *McAllister*, 693 F.3d at 579 (citations omitted). "Indeed, '[t]he fact that a prosecutor's reasons may be founded on nothing more than a trial lawyer's instincts about a prospective juror does not diminish the scope of acceptable invocation of peremptory challenges, so long as they are the actual reasons for the prosecutor's actions.'" *Braxton v. Gansheimer*, 561 F.3d 453, 459 (6th Cir. 2009) (quoting *United States v. Power*, 881 F.2d 733, 740 (9th Cir. 1989)).

In the third step, the court must determine whether the opponent of the strike has carried its burden of establishing purposeful discrimination. *Batson*, 476 U.S. at 98. In doing so, "[t]he judge must assess the plausibility of the proponent's race-neutral reason in light of all evidence with a bearing on it," *McAllister*, 693 F.3d at 580 (citing *Miller-El v. Dretke*, 545 U.S. 231, 251–52 (2005)), and must "presume[] that the facially valid reasons proffered by the prosecution are true," *Lancaster v. Adams*, 324 F.3d 423, 433 (6th Cir. 2003) (citing *Hernandez*, 500 U.S. at 359–60).

This last step is largely a matter of "whether the trial court finds the prosecutor's race-

neutral explanations to be credible." *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) ("*Cockrell*"). In other words, "the decisive question will be whether counsel's race-neutral explanation ... should be believed." *Hernandez*, 500 U.S. at 365. The Supreme Court has explained that "[c]redibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Cockrell*, 537 U.S. at 339. At the same time, it has acknowledged that "[t]here will seldom be much evidence bearing on [the] issue" of credibility, and as a result, "the best evidence often will be the demeanor of the attorney who exercises the challenge." *Hernandez*, 500 U.S. at 364–65.

### III. ANALYSIS

In making explicit findings of fact on the *Batson* challenge, the Court finds credible the Government's argument that it had "*two* highly plausible and persuasive race-neutral bases for excluding each of the two African-American jurors." (Doc. No. 137 at 6 (emphasis in original).)

*A. Juror Ewing*

For Ewing, the first of the two African-Americans stricken from the jury pool, the Government stated at trial that its "main reason" for striking him was his unemployed status at the time. (Doc. No. 89 at 24.) In subsequent briefing, the Government explained that it believed unemployed jurors would be more likely to empathize with a defendant who is financially desperate and willing to lie to make money. (Doc. No. 136 at 6–7.) At trial, the Government stated its second reason for the strike was that Ewing had a law enforcement background — having served for four years as a military police officer — that might cause him to sympathize with Defendant. (Doc. No. 89 at 25.)

Based on the Court's assessment of the Government's credibility, the Court finds that its

race-neutral explanations for the strike based on Ewing's employment status and history "should be believed." *Hernandez*, 500 U.S. at 365.

First, the Court finds the Government's explanations were reasonable. That Ewing was unemployed was established by the Court in the juror questionnaire. (Doc. No. 88 at 18.) The record shows that the Government also struck a Caucasian juror who also was unemployed. (Doc. No. 88 at 65–69.) The Government's belief that employment status is indicative of a juror's likelihood to sympathize with a person accused of fraud for personal gain may or may not have been a correct judgment of human nature; however, the Court finds it was not *unreasonable* as a litigation strategy, given Defendant's potential strategy of portraying himself as a person in desperate straits. Similarly, just as the parties struck jurors with experience in the mortgage and loan industry (Doc. No. 88 at 17, 22–23, 38), it would not be unreasonable to strike a juror who spent four years working as a federal law enforcement agent, in a case where Defendant's position as an FBI agent played a prominent role.

Second and just as importantly, the Court finds the prosecutor, Assistant United States Attorney Humble, was sincere in his demeanor in stating that these employment issues drove the decision. Nothing in his statements, or in his tone or behavior before the Court, suggested the explanation was a façade for his desire to remove African-Americans from the pool.

Nonetheless, in an effort to evaluate "the plausibility of the proponent's race-neutral reason in light of all evidence with a bearing on it," the Court of Appeals highlighted evidence of white jurors whom it believed were similarly situated to Ewing and thus whose appearance on the jury undermined the Government's proffered race-neutral explanations. *McAllister*, 693 F.3d at 580–82. These included a juror who worked on an interim basis as a teacher, a juror who "worked at home," and a retired probation officer. *Id.* at 581–82. The Government argues in its

7

brief that these comparisons are inappropriate and do not undermine its explanations. It argues that the part-time work of the interim teacher shows a diligent effort to earn a living, and it distinguishes the work of probation officers — who monitor compliance of the formerly incarcerated with the terms of their release — from that of law enforcement officers, who investigate crimes and make arrests. (Doc. No. 137 at 6–7.)[2] The Government also stated at the November 6 hearing that the juror who "worked at home" was believed, at the time, to be a homemaker or self-employed, a status that the Government considered on par with employed potential jurors and not the unemployed. In addition, the Government stated at trial and again in the November 6, 2012, hearing, that at the time the Government struck Ewing, another African-American remained in the pool of qualified jurors. (Doc. Nos. 89 at 25; 137 at 7.)

While the Court acknowledges that some facts remain unknown — for instance, what Ewing's duties as a military police officer entailed, or what Goodowens meant when she stated she "worked at home" — the Court finds that the evidence highlighted by the Court of Appeals does not create enough inconsistency to undermine the Court's strong belief that the Government was sincere and credible in its explanations at trial. As the Supreme Court acknowledged, "[t]here will seldom be much evidence bearing on" the issue of whether the Government "should be believed," and, as a result, the Court's assessment of credibility is decisive. *Hernandez*, 500 U.S. at 365. As a result, the Court finds the Defendant failed to meet his burden of establishing purposeful discrimination regarding Juror Ewing.

B. *Juror Pillow*

In its remand order, the Court of Appeals appeared to accept this Court's finding that

---

[2] The Court notes that Wallace-Langson asserted in *voir dire* that, as a state probation officer, she had never worked with FBI agents and had limited interaction with "federal authorities" in the form of federal probation officers. (Doc. No. 89 at 18–19.)

Defendant's *Batson* challenge failed as to the peremptory strike against Juror Pillow, the second African-American in the jury pool. Nonetheless, the Court makes explicit here its findings regarding Pillow.

The record shows that the Government struck Pillow after she revealed she had a prior conviction for dishonesty, specifically for "giving false information to law enforcement in the pursuit of an official investigation and [as an] accessory after the fact." (Doc. No. 88 at 54.) Pillow explained that she went to trial on these charges in 2001, was convicted, received a sentence of three years of probation, and had since had her "rights restored." (*Id.* at 54–55.) Her juror questionnaire did not include mention of this prior conviction, which was revealed only when the Government questioned her directly.

The Court finds it reasonable for the prosecution to strike a potential juror convicted of dishonesty, in particular for a trial that involves crimes of fraud and deception. As a result, the Court finds this race-neutral explanation credible, and concludes that Defendant has not met his burden regarding Pillow's exclusion from the jury pool.[3]

---

[3] As a side matter, Defendant's counsel at the November 6 hearing stated his dismay that – in the year 2010 – an African-American defendant could face conviction in the hands of an all-white jury. Having discussed the issue at hearing, the Court notes that the randomly selected jury pool in this case contained slightly fewer African-Americans than might be expected, based on other jury pools in the division and on the local population. According to the jury coordinator for the Middle District of Tennessee, Ewing and Pillow were the only African-Americans in a pool of thirty (6.67 percent) potential jurors for Defendant's trial. This is a lower representation of African-Americans than the total nine African-Americans of eighty-five potential jurors (10.6 percent) appearing for service in three Nashville Division trials on that day. (The percentage of African-Americans in the jury pools of the other two trials was 9.52 and 15.15 percent.) It is also less than the average for the Middle District for the month of November 2010, when African-Americans comprised 10.96 percent of qualified jurors. By contrast, Census data for the fourteen counties comprising the Nashville Division indicates that African-Americans account for 14.6 percent of the total population. Nonetheless, while the Court may share Defendant's dismay at the jury's final composition, the original composition of the entire petit jury pool is not an issue in this matter.

## IV. CONCLUSION

Based on the factual findings above, the Court finds Defendant's conviction should stand because he did not meet his burden to establish purposeful discrimination in the Government's use of peremptory strikes.

It is so ORDERED.

Entered this 11 day of December, 2012.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT